IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


```
BONNIE L. HULL,                  )
                                 )
                Plaintiff,       )
                                 )
vs.                              )        Case No. 06-1372-WEB
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____ )
```


RECOMMENDATION AND REPORT


This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On June 28, 2006, administrative law judge (ALJ) Michael R.

Dayton issued his decision (R. at 12-21).  The ALJ determined that plaintiff had sufficient quarters of coverage to remain insured through December 31, 2004 (R. at 12, 14).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision (R. at 14).  Plaintiff alleged disability beginning June 10, 2002 (R. at 12).  However, on April 12, 2006, plaintiff's counsel amended the alleged onset date to October 8, 2003 (R. at 140).  At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the left shoulder, and mild bilateral carpal tunnel syndrome (R. at 14, 18).  The ALJ further determined that plaintiff's mental impairments were not severe (R. at 18).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past relevant work as a clerical worker or a teacher's aide.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in finding that plaintiff did not have a severe mental impairment?**

The burden of proof at step two is on the plaintiff.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the

analysis).  A claimant's showing at step two that he or she has a
severe impairment has been described as "de minimis."  Hawkins v.
Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v.
Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of
medical severity").  A claimant need only be able to show at this
level that the impairment would have more than a minimal effect
on his or her ability to do basic work activities.[2]  Williams,844
F.2d at 751.  However, the claimant must show more than the mere
presence of a condition or ailment.  If the medical severity of a
claimant's impairments is so slight that the impairments could
not interfere with or have a serious impact on the claimant's
ability to do basic work activities, the impairments do not
prevent the claimant from engaging in substantial work activity.
Thus, at step two, the ALJ looks at the claimant's impairment or
combination of impairments only and determines the impact the
impairment would have on his or her ability to work.  Hinkle v.
Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

     The ALJ found that plaintiff's mental impairments were not

---

     [2]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3.  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir.
2004).

severe.  His finding on this issue is as follows:

> Although the claimant has reported mental
> impairments, these are not determined to be
> severe. The evidence indicates some
> depression generally controlled with
> medication with the evidence reflecting the
> condition to be stable. Although the claimant
> has alleged some mental limitations related
> to a post concussive syndrome, these are not
> found to be credible. Although the claimant
> sustained a work related injury in August
> 2001, she continued to work through June
> 2002. She did not apply for benefits until
> September 2004 alleging a disability in June
> 2002. Although reporting concentration and
> memory problems, these are not established.
> She has occasional treatment with
> psychologist, Dr. Flanders who noted some
> depression and cognitive disorder. Although
> he evaluated the claimant at the request of
> counsel, and provided restrictive residual
> functional assessments, a review of his
> treatment notes do not indicate significant
> limitations. He has primarily dealt with
> situational issues such as marital discord.
> The claimant had extensive evaluations by Dr.
> Woltersdorf and Dr. Moeller with a finding of
> no severe mental impairment. Overall, the
> claimant has mild restrictions in daily
> activities, no limitations in social
> functioning, mild difficulties in maintaining
> concentration, persistence or pace with no
> evidence of repeated episodes of
> decompensation.

(R. at 18).

In finding that plaintiff's mental impairment is not severe,

the ALJ rejected the opinion of the treating psychologist, Dr.

Flanders, who indicated on a medical source statement-mental that

plaintiff was extremely limited in 2 categories, markedly limited

in 2 categories, moderately limited in 9 categories, and not

7

significantly limited in 7 categories (R. at 359-360).  Dr.
Flanders diagnosed major depression, pain disorder, and cognitive
disorder (R. at 267).  Instead, the ALJ relied on the evaluations
by Dr. Woltersdorf and Dr. Moeller who, according to the ALJ,
made a finding of "no severe mental impairment" (R. at 18).

However, in Dr. Moeller's final report, dated May 23, 2005,
he never stated that plaintiff has no severe mental impairment
(R. at 488-498).  Dr. Moeller indicates that "barring the
occurrence of another TBI (traumatic brain injury) of unknown
etiology, the most likely explanation for the current
discrepancies [in memory testing] is to use an Axis 1 diagnosis
of Malingering" (R. at 498).  Dr. Moeller concludes by stating:

> It is not possible to determine, to a
> reasonable degree of psychological
> probability, [if] any of Ms. Hull's current
> psychological difficulties were caused or
> exacerbated by the physical injury sustained
> in the work-related accident.

(R. at 498).  Although Dr. Moeller did not state that plaintiff
has no severe mental impairments, he indicated that the most
likely diagnosis for the plaintiff was malingering.

Dr. Woltersdorf performed a neuropsychological evaluation on
October 9, 2002, and a second evaluation on April 7, 2003.  His
report is dated April 9, 2003.  Dr. Woltersdorf never stated in
his report that plaintiff had no severe mental impairment (R. at
239-244).  In fact, following his examination of April 7, 2003,
he stated the following:

8

**On the current MMPI-2 there is greater depression now than before.  There [sic] hysterical component is still present and essentially worse than before indicating that Ms. Hull is over-responding to her symptoms and situation.**  Given that we know she had a chronic depression present prior to the accident, this current response is likely a aggravation by the accident as well as by her financial and occupational difficulties. However, given that she reports many more problems than can objectively be found, in the absence of clear malingering indicators, she would most likely benefit from both anti-depressants as well as counseling to help her be more objective about her condition...

**Test results show normal recovery from the mild TBI symptoms found initially along with a worsening depression likely related to accident and situational components.**  Now we know that we initially saw non-permanent residuals from mild TBI and that all objective evidence for mild TBI is now absent.  **There has been emotional worsening along a line that does not help Ms. Hull actually re-enter the community since the hysterical component will make her believe she is more impaired than she actually is.**

(R. at 242-243, emphasis added).  None of the above findings by

Dr. Woltersforf were mentioned by the ALJ in his decision.

Dr. Woltersdorf's report not only does not make a finding of no

severe mental impairment, but finds that testing indicates that

plaintiff's depression is worsening, and that this worsening

condition does not help plaintiff re-enter the community.

In a letter dated August 9, 2005, Dr. Flanders responded to

the evaluation by Dr. Moeller.  Dr. Flanders noted that Dr.

Moeller performed the Test of Malingered Memory (TOMM) (R. at

9

488, 494).  According to Dr. Moeller:

> The TOMM was helpful in understanding Ms.
> Hull's presentation.  This is an assessment
> tool often used to determine any overt
> attempts to malinger memory deficit.  Ms.
> Hull performed quite well on this assessment
> tool, receiving 98% correct responses on the
> third trial of the TOMM.

(R. at 494).  Dr. Flanders indicated that plaintiff's performance

on this test suggested that the plaintiff was not malingering (R.

at 299).  However, neither the TOMM test result, nor Dr.

Flanders' discussion of the test result, was discussed by the

ALJ.

In discounting the opinions by Dr. Flanders, the ALJ stated

that Dr. Flanders' treatment notes "do not indicate significant

limitations" (R. at 18).  Referencing Dr. Flanders' treatment

notes, the ALJ stated that Dr. Flanders found in June 2004 that

the plaintiff "did not have problems with concentration and

memory as referenced by her activities including the ability to

do crypto games in the paper" (R. at 20).  However, this

treatment note of Dr. Flanders actually states:

> She [plaintiff] is able to do activities that
> require the use of concentration and memory,
> such as crypto-games in the paper but she has
> trouble sustaining concentration [due] to the
> pain.

(R. at 258).  The ALJ misstated the evidence by indicating that

Dr. Flanders found that plaintiff did not have problems with

concentration and memory.  In fact, the record clearly indicates

10

that Dr. Flanders found that plaintiff had trouble sustaining concentration due to the pain.

The ALJ also indicated that Dr. Flanders' treatment notes from August 2005 through February 2006 (R. at 351-356) do not reflect marked or extreme limitations because they indicate that plaintiff was doing better and was at a maintenance level care, and that plaintiff and her husband were getting along better and were planning to travel (R. at 17).  However, the ALJ did not cite to any medical source who opined that treatment notes indicating that plaintiff seems to be doing "slightly better" and is "in maintenance level of care" (R. at 351), or that plaintiff is getting along better with her husband and planning to travel contradicts Dr. Flanders' opinions that plaintiff has marked and extreme mental limitations in four categories.  An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical evidence to support the ALJ's assertion that these treatment notes are inconsistent with the opinions of Dr. Flanders, the ALJ

overstepped his bounds into the province of medicine.  Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Finally, it should be noted that Dr. Gary Williams, plaintiff's treating physician, had stated on May 18, 2005[3] that plaintiff had "very poor memory" (R. at 298).  Dr. Williams states in his treatment notes of April 13, 2005 that "from a physical activity standpoint she is not able to maintain a job secondary to her poor mental functioning" (R. at 309).  However, these opinions were not discussed by the ALJ when he determined that plaintiff had no severe mental impairment.

The court finds that the evidence in the record does not support the ALJ's determination that Dr. Woltersdorf and Dr. Moeller made a finding that plaintiff had no severe mental impairment.  Dr. Woltersdorf's evaluation indicated that plaintiff's depression is getting worse, and that her worsening emotional condition does not help the plaintiff re-enter the community.  Although Dr. Moeller did not make a finding that plaintiff did not have a severe mental impairment, he indicated that the most likely diagnosis was malingering.  However, the ALJ failed to mention the TOMM test result which, according to Dr.

---

[3]The date on the document by Dr. Williams is somewhat illegible (R. at 298).  The ALJ found that the date was May 18, 2005 (R. at 15); however, the index to the record indicates that the date was March 18, 2005 (R. at 3).

Flanders, would suggest that plaintiff was not malingering.[4]
Furthermore, the ALJ misstated a portion of Dr. Flanders'
treatment notes, and he overstepped his bounds into the province
of medicine when evaluating some of the treatment notes.
Finally, the ALJ failed to discuss the finding by Dr. Williams,
plaintiff's treating physician, that plaintiff had very poor
memory and could not maintain a job secondary to her poor mental
functioning.  For these reasons, the court finds that the ALJ's
determination that plaintiff does not have a severe mental
impairment is not supported by substantial evidence.  This case
shall be remanded in order for the ALJ to give proper
consideration to all the evidence pertaining to plaintiff's
mental impairment.

**IV.  Did the ALJ err in his RFC findings?**

According to SSR 96-8p the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonlexical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why

---

[4]The ALJ cannot ignore evidence favorable to the plaintiff.
Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion,

citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by

substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.

781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must

be sufficiently articulated so that it is capable of meaningful

review; the ALJ is charged with carefully considering all of the

relevant evidence and linking his findings to specific evidence.

Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,

2003).  It is insufficient for the ALJ to only generally discuss

the evidence, but fail to relate that evidence to his

conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49

F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to

comply with SSR 96-8p because he has not linked his RFC

determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the

ALJ's RFC determination.  Such bare conclusions are beyond

meaningful judicial review.  Brown v. Commissioner of the Social

Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.

14

2003).

The ALJ's RFC findings were as follows:

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> for a range of light activities with lifting
> or carrying 10 pounds frequently and 20
> pounds occasionally, sitting about 6 hours in
> an 8 hour work day, and standing or walking
> about 6 hours in an 8 hour work day with
> occasional limitations regarding climbing
> ladders, ropes or scaffolding with the need
> to avoid overhead reaching with the left
> side, avoid concentrated exposure to extreme
> cold and moderate exposure to vibrations.

(R. at 19).

Based on the court's determination that the ALJ erred in finding at step two that plaintiff had no severe mental impairment, on remand, the ALJ shall reevaluate plaintiff's RFC after giving proper consideration to all the evidence pertaining to plaintiff's mental impairment. However, the court finds other errors by the ALJ in his RFC analysis.

In explaining this finding, the ALJ stated that, with the exception of Dr. Flanders, all of the doctors who have treated or examined the plaintiff have indicated that she is not disabled or seriously incapacitated (R. at 20). However, Dr. Williams, plaintiff's treating physician, had stated on April 13, 2005 that "from a physical standpoint she is not able to maintain a job secondary to her poor mental functioning" (R. at 309).

The ALJ indicated that his RFC findings are in general

15

agreement with the medical opinions of the state agency medical
consultants (R. at 20, 288-296).  Dr. Williams, plaintiff's
treating physician, opined that plaintiff could not climb,
balance, or crawl, and could only occasionally stoop, kneel,
crouch, reach and handle (R. at 298).  Dr. Murati, who evaluated
the plaintiff at the request of her attorney (R. at 246), opined
on November 24, 2003 that plaintiff could only "rarely"
bend/crouch/stoop, could not crawl, could not work more than
18/24 inches from the body on the left side, and must avoid
awkward positions of the neck.  Dr. Murati indicated that these
restrictions were permanent (R. at 250).  None of these
restrictions were discussed or mentioned by the ALJ, and the ALJ
offered no explanation for not including these restrictions in
his RFC findings.  When an RFC assessment conflicts with opinions
from a medical source, the ALJ must explain why those opinions
were not adopted.  The ALJ clearly erred by offering no
explanation for not including these restrictions set forth by a
treating and an examining physician.  On remand, the ALJ must
consider these opinions when determining plaintiff's RFC.

The ALJ did consider the medical source statement-physical
provided by Dr. Flanders on August 9, 2005, but gave it little
weight because he was a psychologist and not a medical doctor (R.
at 20).  However, the opinions of Dr. Flanders cannot be
considered in isolation, but should be considered in light of the

opinions of Dr. Williams and Dr. Murati.  Both Dr. Williams and

Dr. Flanders opined that plaintiff could not climb, balance or

crawl, and could only occasionally stoop, kneel, crouch, reach

and handle (R. at 298, 301).

**V.   Did the ALJ err in his step four findings?**

At step four, the ALJ is required by social security ruling

(82-62) to make findings of fact regarding: 1) the individual's

residual functional capacity, 2) the physical and mental demands

of prior jobs or occupations, and 3) the ability of the

individual to return to the past occupation given his or her

residual functional capacity.  Henrie v. United States Department

of HHS, 13 F.3d 359, 361 (1993).  At each of these three phases,

the ALJ must make specific findings.  Winfrey v. Chater, 92 F.3d

1017, 1023 (10th Cir. 1996).[5]  An ALJ can comply with these

_____

[5]In Winfrey, the court noted that the Secretary glossed over
the absence of the required ALJ findings by relying on the
testimony of the vocational expert (VE) that plaintiff could meet
the mental demands of his past relevant work, given his mental
limitations as found by the ALJ.  The court stated that this
practice of delegating to a VE many of the ALJ's fact finding
responsibilities at step four appears to be of increasing
prevalence and is to be discouraged.  The court went on to say as
follows:

> Requiring the ALJ to make specific findings
> on the record at each phase of the step four
> analysis provides for meaningful judicial
> review.  When, as here, the ALJ makes
> findings only about the claimant's
> limitations, and the remainder of the step
> four assessment takes place in the VE's head,
> we are left with nothing to review...a VE may
> supply information to the ALJ at step four
> about the demands of the claimant's past

requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).  At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work.  When the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be remanded in order for the ALJ to make the specific factual findings regarding the demands of claimant's past relevant work. Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

In this case, the ALJ stated that the vocational expert (VE) testified that the plaintiff's past employment as a clerical worker or teacher's aide could be performed by one subject to the RFC limitations established by the ALJ.  Based on the VE's testimony, the ALJ found that plaintiff could return to past

> relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Winfrey, 92 F.3d at 1025.

relevant work as a clerical worker or teacher's aide (R. at 21). However, the ALJ made no findings regarding the physical or mental demands of plaintiff's past relevant work.  Therefore, on remand, the ALJ shall comply with the above case law when making findings at step four.

**VI.  Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

At step five, the burden of proof is on the defendant to produce evidence that the claimant could perform other work in the national economy.  Where the burden is not met, reversal is appropriate.  Harris v. Secretary of Health & Human Services, 821 F.2d 541, 544 (10th Cir. 1987).  When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th

Cir. 1993).  A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits.  <u>Harris</u>, 821 F.2d at 545; see <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  <u>Gilliland v. Heckler</u>, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Plaintiff seeks reversal for an award of benefits.  The ALJ made errors in his analysis at steps two and four, and in making his RFC findings.  There is certainly evidence in this case that would support a finding of disability, including the opinions of Dr. Williams and Dr. Flanders;[6] however, this is not a case in which uncontradicted evidence in the record as a whole indicates that plaintiff is disabled and entitled to benefits.  In addition, the ALJ did not even consider the opinions expressed by Dr. Williams, or the response by Dr. Flanders to the diagnosis of Dr. Moeller that plaintiff was most likely malingering; the court should not properly engage in the task of weighing evidence in

---

[6]Plaintiff cites to testimony by the VE that moderate limitations in plaintiff's ability to understand, remember and carry out detailed instructions would preclude past work and would not give her any transferable skills, and that the addition of the physical limitations opined by Dr. Williams would preclude past work (R. at 532-533).

the first instance.  <u>Neil v. Apfel</u>, 156 F.3d 1244 (table), 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998); <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996).  Therefore, this case shall be remanded for further hearing as set forth above.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 14, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge